ANTHONY M. BARNES (Bar No. 199048)
Email: amb@atalawgroup.com
KENYA S. ROTHSTEIN (Bar No. 340854)
Email: ksr@atalawgroup.com
AQUA TERRA AERIS LAW GROUP LLP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Phone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit association, <br><br> Plaintiff, <br><br> v. <br><br> PACIFIC PALLET EXCHANGE, INC., a California corporation, <br><br> Defendant. | **Case No.  2:24-cv-00522-TLN- CKD** <br><br> **CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives.

**WHEREAS**, Pacific Pallet Exchange, Inc. ("Pacific Pallet" or "Defendant") owns and operates an industrial facility at 3315 51st Avenue, Sacramento, California 95823 in Sacramento County ("Facility").

**WHEREAS**, the Facility industrial purpose is the supply and production new and recycled crates, skids and pallets. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2448 covering establishments primarily engaged in manufacturing wood pallets and skids.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ, 2015-0122-DWQ and Order 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the General Permit;

**WHEREAS**, on May 11, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director San Francisco Bay Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of the EPA Region IX, alleging violations of the Clean Water Act and the General Permit, Water Quality Order No. 2014-0057-DWQ and amended by Order No. 2015-0122 –DWQ and incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Loads ("TMDL") Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, and as subsequently amended by Order 2018-0028-DWQ (effective July 1, 2020) ("General Permit" or "Storm Water Permit"), at the Facility;

WHEREAS, on June 1, 2020, a large fire at the Facility demolished most of the property, including the manufacturing building, and once final permitting is secured, construction on a new, larger manufacturing building should begin in May or June of 2024 and take approximately one year to complete (see Exhibit A, improvement plans for 3315 51st Avenue, Sacramento, California 95823);

WHEREAS, Defendant currently has two Waste Discharger Identification Numbers ("WDID") for coverage under the General Permit including one with a No-Exposure Certification;

**WHEREAS**, on February 20, 2024 CSPA filed a complaint against Pacific Pallet Exchange, Inc. in the Eastern District of California, Civil Case No. 2:24-at-00178 ("Complaint");

**WHEREAS**, Plaintiff's complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters of the Sacramento–San Joaquin River Delta ("Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3.      The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      CSPA has standing to bring this action;

5.      The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issue raised within the three (3) year term of this Consent Decree.

**I.   OBJECTIVES**

6.      It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by CSPA in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.      In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.      Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10.      Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. EFFECTIVE DATE AND TERM OF CONSENT DECREE

11.      Effective Date. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12.      Term & Termination. This Consent Decree shall terminate three (3) years from the Effective Date unless: 1) either the Facility satisfies the requirements of and receives an approval for a "Notice of Termination" ("NOT") as that term is defined in the General Permit, in which case the Consent Decree will terminate as to the Facility approved for NOT five (5) days after notice of the NOT is provided to CSPA, provided all monetary requirements owed under the Consent Decree are satisfied at the time the Facility receives NOT approval; or 2) one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

13.     <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Plan ("SWPPP"), Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve the Best Available Technology Economically Achievable ("BAT") and the Best Conventional Treatment Technology ("BCT"). In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.     <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five days of the Effective Date, Defendant shall develop and implement the following BMPs at both Facility, unless a single Facility is identified for implementation of the BMPs below:

      a.  Defendant shall upgrade the current swales along the eastern edge of Drainage Area 2 (DA-2), north of the employee parking and mobile office building, and along the southwestern perimeter of the Facility, with the aim of augmenting its capacity and improving filtration efficiency (See Exhibit B, Recommended Swale Improvements map). To achieve this, all stones currently in place must be removed. The swale should then be widened to at least four feet and deepened to two feet, maintaining a side slope of 1:1. Additionally, check dams are to be constructed at intervals of no more than twenty feet, utilizing the stones already available and supplementing with washed ¾" drain rock.

b. Defendant shall upgrade the current swale along the eastern entrance west of the mobile office building to enhance sediment removal and vehicle access (See Exhibit B). The existing informal ditch shall be excavated to a width of at least four feet and a depth of at least one foot. The ditch shall be filled with ¾" drain rock to facilitate stormwater flow and vehicle access.

c. Defendant shall install synthetic wattles filled with biochar media along the upstream side of 50% of each installed check dam to enhance stormwater retention time and pollutant removal efficiency.

d. Defendant shall retrofit the drain inlet protection features surrounding the drop inlet at Drainage Area 1 ("DA-1"). At least three concentric rings of synthetic wattles filled with biochar media shall surround the drop inlet, and at least three concentric rings of straw wattles secured with weighted rock bags shall surround the synthetic wattles;

e. Defendant shall institute a formal pre-rain protocol throughout the wet season involving inspection and replacement, as needed, of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained debris bins and trash cans under cover;

f. Defendant shall replace all synthetic and straw wattles annually, ensuring this is completed before September 15 each year for the duration of this Consent Decree;

g. Defendant shall implement effective stormwater management measures for all planned buildings and other impervious infrastructure including the installation of drain inlet protection and filtration swales, along with other best management practices deemed appropriate, to adequately control and treat stormwater runoff (See Exhibit B);

h. Defendant shall inspect operation work areas daily to ensure adequate implementation and maintenance of operational procedures and control measures;

i. Defendant shall perform maintenance activities only in designated work areas or beneath covered maintenance areas; and should outdoor vehicle or equipment maintenance activities be required, Defendant shall place absorbent cover material

6
CONSENT DECREE

beneath all maintenance activity areas and immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground;

j.   Defendant shall train all staff on proper operational procedures and control measures at the time of initial arrival at the Facility, then at least annually.

k.   Defendant shall terminate the Facility's coverage under the General Permit for the WDID that includes a No-Exposure Certification and maintain or reapply for standard industrial coverage under the General Permit as necessary.

**B. SAMPLING AT THE FACILITY**

15.    Pacific Pallet shall develop a monitoring program consistent with the General Permit. During the term of this Consent Decree, Defendant shall collect and analyze samples of storm water discharge from each Discharge Location designated in the SWPPP from at least four (4) qualified storm events as required by the Industrial General Permit (i.e., two Qualifying Storm Events during the first half of the reporting year[1] and two Qualifying Storm Events during the second half of the reporting year). A Qualifying Storm Event is a storm that produces a discharge from at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to CSPA by email within five (5) days of the data a sample should have been collected but was not. If, prior to February 1 of a reporting year, Pacific Pallet has collected samples from two (2) or fewer qualifying storm events, Pacific Pallet shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

16.    Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

17.    Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times,

---

[1] A reporting year is defined as July 1 through June 30.

pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

18.     <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

19.     <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to CSPA within ten (10) days of receiving the results.

## C. REDUCTION OF POLLUTANTS IN DISCHARGES

20.     Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1. As of the Effective Date, and for the remainder of the term of this Consent Decree, if stormwater samples demonstrate NAL or Instantaneous NAL exceedances, as defined in the General Permit, when compared to the applicable NAL values in the General Permit (and contained below in Table 1) in a single reporting year, Defendant shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L<br>400 mg/L | Annual NAL<br>Instantaneous NAL |
| Chemical Oxygen Demand | 120 mg/L | Annual NAL |
| Oil & Grease | 15 mg/L<br>25 mg/L | Annual NAL<br>Instantaneous NAL |
| Biochemical Oxygen Demand | 30 mg/L | Annual NAL |
| pH | 6-9 s.u. | Instantaneous NAL |

21. <u>Action Plan for Table 1 Exceedances</u>: As of the Effective Date, and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an exceedance as defined above, Defendant shall prepare and submit to CSPA a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The Action Plan shall be submitted to CSPA by June 30 of any reporting year under this Consent Decree.

a.  <u>Action Plan Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Defendant shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

b.  <u>Action Plan Proposed BMPs:</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

   i.  <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

   ii.  <u>Treatment Systems</u>: Installing an advanced storm water treatment system, or adding additional components or systems, or otherwise improving, a preexisting advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

   iii.  <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or

CONSENT DECREE

employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

a.  Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting Year. Defendant shall notify CSPA in writing when an Action Plan has been implemented.

b.  Action Plan Review: CSPA shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving CSPA's proposed revisions to aa Action Plan, Defendant shall consider each of CSPA's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**D.  VISUAL OBSERVATIONS**

22.  Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct visual observations during the Facility's operating hours during every rain event that produces a discharge at all locations where storm water is discharged from the Facility.

23.  Non-Storm Water Discharge Observations: During the life of this Consent Decree, Defendant shall conduct monthly non-storm water visual observations at each discharge location.

24.  <u>Visual Observations Records</u>: Defendant shall maintain observation records to document compliance with paragraphs 22 and 23 and shall provide CSPA with a copy of those records within fourteen (14) days of receipt of a written request from CSPA for those records.

25.  <u>Employee Training Program</u>: Within forty-five days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

a.  <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit.

b.  Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the General Permit) familiar with the requirements of this Consent Decree and the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the General Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

c.  <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

d.  <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e.  <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

f.  <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date;

g.  The Defendant shall maintain training records to document compliance with this paragraph and shall provide CSPA with a copy of these records within fourteen (14) days of receipt of a written request.

h.  <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within thirty (30) days of the Effective Date, Defendant shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

26.  <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP, SWPPP map and MIP to incorporate the requirements in this Consent Decree. Defendant agrees to submit the updated SWPPP and MIP to CSPA upon completion for review and comment.

a.  <u>Review of SWPPP and/or MIP</u>: CSPA shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving CSPA's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is no incorporated;

b.  Defendant shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to CSPA's review and comment as provided in paragraph 26 (a) above.

1    c.   The Parties agree to work in good faith to resolve any disputes with respect to the

2         SWPPP or MIP, and any remaining disputes will be resolved through timely

3         initiation of the dispute resolution procedures in Section IV below.

4         **E. COMPLIANCE MONITORING AND REPORTING**

5    27.   Every year during the life of this Consent Decree, CSPA may conduct one annual

6    site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree

7    and the General Permit. In the event of a dispute regarding Defendant's compliance with this

8    Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute,

9    the Parties agree to meet and confer regarding one additional Site Inspection for the term of the

10   Consent Decree at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall

11   not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during

12   normal business hours, and CSPA will provide Defendant with as much notice as possible—but at

13   least twenty-four (24) hours' notice prior to a Site Inspection in anticipation of wet weather, and

14   seventy-two (72) hours' notice during dry weather. For any Site Inspection requested to occur in

15   wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours

16   in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates

17   the purpose of visiting the Facility in wet weather. Notice will be provided by telephone and

18   electronic mail to the individual(s) designated below at paragraph 56. During the Wet Weather

19   inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge

20   from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent

21   that such discharges are occurring. Defendant shall collect the sample and provide a split sample to

22   CSPA. CSPA's representative(s) may observe the split sample(s) being collected by Defendant's

23   representative. CSPA shall be permitted to take photographs or video recording during any Site

24   Inspection.

25   28.   Document Provision. During the term of this Consent Decree, Defendant shall notify

26   and submit documents to CSPA as follows:

27   a.   Defendant shall copy CSPA on all compliance documents, monitoring and/or

28        sampling data, written communications and/or correspondences, or any documents

related to storm water quality at the Facility that are submitted to the Regional

Board, the State Board, and/or any state or local agency, county or municipality.

b.    Any compliance document, inspection report, written communication and/or

correspondence, or any document related to storm water quality at the Facility

received by Defendant from the Regional Board, the State Board, and/or any state or

local agency, county, municipality shall be sent to CSPA within three (3) business

days of receipt by Defendant. Defendant shall mail paper copies or email electronic

copies of documents to CSPA at the relevant notice address contained below.

29.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with

Plaintiff's monitoring of Defendant's compliance with this Consent Decree with a payment of Four

Thousand dollars ($4,000.00). The payment shall be made within ninety (90) days of the Effective

Date, payable Aqua Terra Aeris Law Group LLP, and delivered by overnight carrier to Aqua Terra

Aeris Law Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

30.    Failure to submit payment as required under this paragraph will constitute breach of

the Consent Decree.

**F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

31.    <u>Environmental Mitigation Project</u>: To fund environmental project activities that will

reduce or mitigate the impacts of pollution from industrial activities to storm water discharged to

the Sacramento River or to waterways tributary to the Sacramento River within a 50-mile radius of

the Facility. Defendant agrees to make a total payment of Ten Thousand Dollars ($10,000.00) to the

Rose Foundation with half ($5000.00) to be made within forty-five (45) days of the Effective date,

and the other half ($5000.00) to be made within one hundred twenty (120) days after the Effective

Date, payable to the Rose Foundation for Communities and the Environment and sent via overnight

mail to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide CSPA

with a copy of such payment.

32.    <u>CSPA's Fees and Costs</u>: Defendant agrees to pay a total of Forty-Three Thousand

($43,000.00) to CSPA to partially reimburse Plaintiff for its investigation fees and costs,

1   expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of

2   investigating and filing the lawsuit, and negotiating a resolution of this matter. Half of the payment

3   ($21,500.00) shall be made within forty-five (45) days of the Effective Date, and the other half

4   ($21,000.00) to be made within one hundred twenty (120) days after the Effective Date payable to

5   Aqua Terra Aeris Law Group LLP, and delivered by overnight carrier to Aqua Terra Aeris Law

6   Group, 4030 Martin Luther King Jr. Way, Oakland, CA 94609.

7         33.      Defendant shall make a remediation payment of Two Hundred dollars ($200.00) for

8   each missed deadline included in this Consent Decree that is not excused by CSPA in writing to an

9   extension of that particular deadline. Payments for missed deadlines shall be made to: Rose

10   Foundation for Communities and the Environment, ATTN: Rose Foundation, 201 4th Street, Ste.

11   102, Oakland, California 94607. Defendant agrees to make the stipulated payment within thirty (30)

12   days of a missed deadline or failure to sample. Defendant shall provide CSPA with a copy of each

13   such payment at the time it is made.

14         34.      <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or

15   costs owed to CSPA under this Consent Decree that CSPA has not received by the due date. The

16   interest shall accrue starting the first day after the payment is due and shall be computed at a rate of

17   1% per month (12% per year). Interest on late payments shall be made payable to CSPA and sent to

18   the address listed in paragraph 56, below.

19   **IV. DISPUTE RESOLUTION**

20         35.      This Court shall retain jurisdiction over this matter for the term of this Consent

21   Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among

22   the Parties that may arise under the provisions of this Consent Decree. The Court shall have the

23   power to enforce this Consent Decree with all available legal and equitable remedies, including

24   contempt.

25         36.      <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute

26   resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in

27   dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer

28   in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an

attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

37.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 36, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Eastern District of California. The Parties agree to request an expedited hearing schedule on the motion.

38.     In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

39.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

40.     <u>Defendant's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the Stormwater Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.  MISCELLANEOUS PROVISIONS

42.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

43.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

44.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

45.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

46.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

47.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49.     Choice of Law. The laws of the United States shall govern this Consent Decree.

50. <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for the structural BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

51. <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

52. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

53. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

54. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

55. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to

pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

56.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Anthony M. Barnes | Timothy D. Hastie |
| Aqua Terra Aeris Law Group LLP | RAIMONDO \| MILLER, ALC |
| 4030 Martin Luther King Jr. Way | PO Box 28100 |
| Oakland, CA 94609 | Fresno, CA 93729 |
| amb@atalawgroup.com | |

| With copies to: | With copies to: |
|---|---|
| Chris Shutes, Executive Director | Ricardo Zepeda |
| California Sportfishing Protection Alliance | Pacific Pallet Exchange, Inc. |
| 1608 Francisco Street | 3315 51st Avenue |
| Berkeley, CA 94703 | Sacramento, CA 95823 |
| blancapaloma@msn.com | |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

57.    If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as

well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.


APPROVED AS TO CONTENT


Dated: February 21, 2024                    By: __/s/_____
                                                 Chris Shutes, Executive Director
                                                 California Sportfishing Protection Alliance


Dated: February 22, 2024                    By: __/s/_____
                                                 Ricardo Zepeda
                                                 Pacific Pallet Exchange, Inc.


APPROVED AS TO FORM


Dated: February 21, 2024                    By: _/s/_____
                                                 Anthony M. Barnes
                                                 Attorney for Plaintiff
                                                 California Sportfishing Protection Alliance


Dated: February 22, 2024                    By: _/s/_____
                                                 Timothy D. Hastie
                                                 Attorney for Defendant
                                                 Pacific Pallet Exchange, Inc.


DATE: April 9, 2024

                                                 _____
                                                 Troy L. Nunley
                                                 United States District Judge